J-S38041-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JAMES ROBINSON | : | |
| | : | |
| Appellant | : | No. 3794 EDA 2016 |

Appeal from the PCRA Order November 21, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0001552-2007

BEFORE:   GANTMAN, P.J., SHOGAN, J., and PLATT, J.*

MEMORANDUM BY GANTMAN, P.J.:                **FILED JANUARY 31, 2018**

Appellant, James Robinson, appeals *pro se* from the order entered in the Philadelphia County Court of Common Pleas, which denied his first petition brought pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

In its opinion, the PCRA court fully and correctly set forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.

Appellant raises the following issues for our review:

> WHETHER THE TRIAL JUDGE'S MISAPPLICATION OF LAW UNDER PA. R.E. 803(1) DEPRIVED APPELLANT OF HIS

---

[1] 42 Pa.C.S.A §§ 9541-9546.

---

*Retired Senior Judge assigned to the Superior Court.

LIBERTY WITHOUT DUE PROCESS OF LAW UNDER PA. R.E. 803(1)?

WHETHER TRIAL COUNSEL'S INEFFECTIVENESS IN FAILING TO OBJECT TO THE TRIAL JUDGE'S MISAPPLICATION OF THE LAW UNDER PA.R.E. 803(1) DEPRIVED APPELLANT OF HIS SIXTH AMENDMENT RIGHT TO A FAIR TRIAL?

WHETHER TRIAL COUNSEL'S INEFFECTIVENESS IN FAILING TO CALL KEITH JONES AS A WITNESS DEPRIVED APPELLANT OF HIS SIXTH AMENDMENT RIGHT TO A FAIR TRIAL?

WHETHER TRIAL COUNSEL'S INEFFECTIVENESS IN FAILING TO INTERVIEW BARBARA DANTZLER, VIRNA CLAY, AND [H.B.] AND TO INVESTIGATE PROPERLY DEPRIVED APPELLANT OF HIS SIXTH AMENDMENT RIGHT TO A FAIR TRIAL?

WHETHER PCRA COUNSEL'S INEFFECTIVENESS IN FILING A NO-MERIT LETTER RATHER THAN FILING AN AMENDED PCRA PETITION RAISING TRIAL JUDGE'S MISAPPLICATION OF LAW, TRIAL COUNSEL'S INEFFECTIVENESS IN FAILING TO OBJECT TO THE TRIAL JUDGE'S MISAPPLICATION OF LAW AND TRIAL COUNSEL'S INEFFECTIVENESS IN FAILING TO CALL A WITNESS, DEPRIVED APPELLANT OF HIS DUE PROCESS RIGHT TO AN EVIDENTIARY HEARING?

WHETHER THE PCRA JUDGE'S MISAPPLICATION OF LAW UNDER **COM. V. FINLEY**, 550 A.2D 213, 215 (PA.SUPER. 1988), IS AN ABUSE OF DISCRETION, WHICH DEPRIVED APPELLANT OF HIS FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS OF LAW UNDER **COM. V. FINLEY**, 550 A.2D 213, 215 (PA.SUPER. 1988)?

(Appellant's Brief at 5).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Jeffrey P. Minehart, we conclude Appellant's issues merit no relief. The PCRA court

opinion comprehensively discusses and properly disposes of the questions presented. (*See* PCRA Court Opinion, filed December 16, 2016, at 1-22) (finding: **(1)-(2)** Superior Court sustained ruling on inadmissibility of certain statements Appellant's counsel sought to introduce at trial; Superior Court concluded statements contained multiple layers of hearsay, without any exception; because these claims were raised and rejected at trial and on appeal, they lack arguable merit under ineffectiveness of counsel test and continue to warrant no relief; **(3)-(4)** claim regarding Keith Jones is dismissed because Appellant failed to set forth what Jones would have testified to or how his testimony would have resulted in different verdict; regarding trial counsel's alleged ineffectiveness in failing to interview Barbara Dantzler, Virna Clay, and [H.B.], PCRA court denied relief because there is no duty to investigate all leads where, as here, overwhelming evidence implicated Appellant; regarding counsel's failure to obtain testimony from H.B. at trial to establish H.B. had confessed to his grandmother that H.B. shot victim, Appellant failed to provide sufficient information to support this claim or apply three prongs of ineffectiveness of counsel test; **(5)** regarding Appellant's assertion of newly discovered evidence consisting of a letter from witness Hassan East's cellmate, stating Appellant was falsely accused, letter constituted inadmissible hearsay; relief was denied because letter did not meet definition of newly discovered evidence and would serve only to impeach East; Appellant failed to establish

information contained in letter would compel different result at trial, given other testimony from witnesses of crime). Accordingly, we affirm issues one through five based on the PCRA court's opinion. In Appellant's issues five and six, he also challenges PCRA counsel's stewardship for the first time in this appeal, so these claims are waived.[2] Therefore, in all respects, we have no reason to disturb the court's decision to deny Appellant's PCRA relief.

Order affirmed.

---

[2] Where PCRA counsel seeks to withdraw from representation, the petitioner must preserve any challenge to counsel's ineffectiveness in a response to counsel's no-merit letter or, if applicable, the court's Rule 907 notice. **See Commonwealth v. Pitts**, 603 Pa. 1, 9 n.4, 981 A.2d 875, 880 n.4 (2009). A petitioner's failure to raise an ineffectiveness of PCRA counsel claim after receiving Rule 907 notice results in waiver of the claim. **Id. See also Commonwealth v. Ousley**, 21 A.3d 1238, 1245 (Pa.Super. 2011), *appeal denied*, 612 Pa. 698, 30 A.3d 487 (2011) (stating **Pitts** prohibits this Court's review of petitioner's ineffectiveness of PCRA counsel claim, where issue was raised for first time in PCRA appeal). Here, Appellant knew counsel's position on Appellant's PCRA petition and counsel's request to withdraw, since July 2016. Although Appellant sought several extensions of time, Appellant failed to respond to counsel's no-merit letter. Likewise, Appellant failed to respond to the court's Rule 907 notice of intent to dismiss, which was sent directly to Appellant as well as to counsel. Therefore, Appellant had sufficient opportunity to preserve his complaints regarding PCRA counsel and simply did not do so.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>1/31/18</u>

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA   :   NO. CP-51-CR-0001552-2007

  : 

VS.   : 

  : 

JAMES ROBINSON   : 

    **FILED**

OPINION     DEC 16 2016

    Appeals/Post Trial
    Office of Judicial Records

## PROCEDURAL HISTORY

Defendant, James Robinson, was charged with, *inter alia*, murder, generally, possession of a firearm prohibited, and carrying a firearm on a public street. These charges were lodged against defendant as a result of an incident that occurred on June 11, 2004, during which defendant shot and killed Michael Brooks in the area of 19th and Venango Street in Philadelphia.

Defendant was first tried in February and March of 2012, before the Honorable Lillian H. Ransom and a jury. The trial ended in a mistrial on March 8, 2012, after the jury indicated that it was unable to reach a verdict. Prior to the commencement of that trial Judge Ransom held a motion in *limine* hearing and made several rulings regarding the admission of evidence.

The matter was thereafter assigned to this Court for trial. Following jury selection defendant's second trial commenced on September 17, 2013. On September 24, 2013, the jury convicted defendant of third-degree murder, possession of a firearm prohibited, and carrying as firearm on a public street. Sentencing was deferred until December 6, 2013, on which date this Court imposed an aggregate sentence of eighteen to thirty-six years' incarceration on defendant.

1

Following the imposition of sentence defendant filed a notice of appeal. On April 15, 2015, the Superior Court affirmed the judgment of sentence. (3612 EDA 2013). Defendant thereafter filed a petition for allowance of appeal, which the Pennsylvania Supreme Court denied on October 28, 2015 (273 EAL 2015).

On January 1, 2016, defendant filed a timely *pro se* petition pursuant to the Post-Conviction Relief Act (hereinafter PCRA), 42 Pa.C.S. § 9541 *et seq*. Counsel was appointed to represent him and on July 10, 2016, counsel filed a no-merit letter filed a "no merit" letter pursuant to Commonwealth v. Turner, 544 A.2d 927 (Pa. 1988), and Commonwealth v. Finley, 550 A.2d 213 (Pa. Super. 1988), and a Motion to Withdraw as Counsel. After carefully reviewing counsel's filings and the entire record in this matter, this Court sent defendant a Pa.R.Crim.P. 907 Notice of Intent to Dismiss on October 6, 2016. On November 21, 2016, this Court issued an order dismissing defendant's PCRA petition and granting PCRA counsel's Motion to Withdraw. Defendant thereafter filed a *pro se* notice of appeal.

FACTS

On June 11, 2004, at or about 5:00 p.m., Philadelphia Police Officer Joseph Simpson went to the 1800 block of Venango Street to investigate a report of shots fired and a man down on the highway. Upon arrival at that location, Officer Simpson observed several police officers in an abandoned lot standing over a male later identified as Michael Brook, the victim herein, who was lying face-up on the ground and had blood under his left eye.[1] The victim was placed in a police car and transported to Temple University Hospital where he was pronounced dead.

An autopsy revealed that the victim died as a result of having suffered a gunshot wound to the back of his neck. The bullet travelled through the victim's spinal cord, some blood

---

[1] The victim was also known as "Deli Mike."

2

vessels, the lower and upper jaws, and exited his right cheek. The manner of death was deemed to be homicide.

An examination of the scene resulted in the discovery of four fired .9 millimeter cartridge cases and a bullet fragment. These items were placed on a property receipt and eventually turned over to a ballistician for further examination. Police also seized a bottle containing mango juice from which two latent fingerprints were lifted. Neither print could be matched to defendant nor the victim.

An examination of the ballistic evidence revealed that all of the fired cartridge cases had been manufactured by Winchester and that they had been ejected from the same semi-automatic weapon. The bullet fragment was too damaged to identify specifically and was designated to be .9 millimeter/.38 in caliber.

Mr. Jarrett Stiff was present when the shooting occurred. He explained that he, the victim, defendant, who he called Jay, and others gambled together frequently both in neighborhood games and in Atlantic City. On the day of the crime, he had parked his car and was talking on his cell phone intending to go up onto Heath Caudle's porch where a craps game was taking place, when he heard defendant and the victim arguing. He then saw defendant walked off the porch past him and toward his (defendant's) truck. As defendant walked away, the victim was berating him. Shortly thereafter, Stiff heard gunshots and ran away. He testified that he did not know who fired the three or four shots he heard ring out that day and believed that the killing may have occurred during a possible robbery.

3

Approximately two weeks after the incident Stiff went of his own volition to the Homicide Division to give police a written statement about the shooting.[2] In that statement, parts of which Stiff at trial accused the police of paraphrasing what he told them, Stiff identified a photograph of defendant as depicting the person who shot the victim. Stiff told police:

> I had just parked my car on the northwest corner of 19th and Venango Street and I got out of my car and I was talking on my cell phone and I could see Deli Mike arguing with Jay, and I heard Mike say something to Jay about no more ass bets, and then Jay said to Deli Mike the only way you're going to get this money off me is to kill me, and then Deli Mike said back to Jay it could be whatever you want it to be. Jay then said he would be right back and got in his white Dodge Ram pickup, which was parked on 19th Street, and then he drove up 19th Street and I didn't pay him any mind. About five minutes later Jay returned and I saw Jay get out of his truck and he walked over towards Deli Mike and when he got to the pavement he started firing a gun at Deli Mike. He fired about three to four shots and then he got back into his truck and drove away north on 19th Street.

N.T. 9/17/13, 109-110.

Stiff thereafter was called as a witness at defendant's preliminary hearing and first trial. During both proceedings, he testified that defendant shot the victim. Stiff indicated that he testified that he did not see who shot the victim during the instant trial, in contradiction to what he testified to at the prior proceedings, because he had been under some type of governmental supervision when the previous hearing took place and he currently was not under any supervision. (N.T. 9/17/13, 185-186).

Mr. Hassan East was also in the area when the shooting occurred. Mr. East was standing near the porch where defendant, the victim, and the others were playing craps when he became

---

[2] Stiff was on bail and believed that if police learned that he had been present at the craps game it might jeopardize his freedom.

4

aware that defendant and the victim were arguing about money or a bet. At some point Mr. East saw defendant leave the porch and walk away.

Approximately two or three minutes later, Mr. East saw defendant return armed with a gun which he used to fire three to five shots in the direction of the porch as he walked toward the porch. At the time, the victim, Heath Caudle, and some others were on the porch. Mr. East got into his car and drove away. He returned approximately thirty minutes later but did not speak to the police.

In 2007, Mr. East, who at the time was in federal custody having pleaded guilty to, *inter alia*, two armed robbery charges and having received a sentence of thirty years, agreed to provide information about other criminal activity of which he was aware.[3] One of the crimes he told federal authorities about was the shooting of the victim herein. Federal authorities contacted Philadelphia homicide detectives, who thereafter interviewed Mr. East, who told them that defendant shot the victim.

Mr. Heath Caudle, a gambling associate of defendant and the owner of the residence where the victim was shot, was present when the victim was killed. During the course of a craps game taking place on Mr. Caudle's porch, defendant was doing very well in relation to all of the other players while the victim was having bad luck. When defendant indicated that he was leaving with his winnings, which Mr. Caudle estimated were between 30 and 40 thousand dollars, the victim, who had a reputation for kibitzing during craps games, began making derisive comments about defendant, who then walked away.

A short time thereafter, Mr. Caudle heard shots and saw the victim laying on the ground. Mr. Caudle then jumped off his porch and fled down an alley where he remained for a short

---

[3] Mr. East was known by those involved in the robberies as "Evil Genius."

5

period of time before returning to his residence where attempted to calm the victim who was trying to say something but was unable to mouth any words. The police arrived shortly thereafter.

Following the incident, police briefly questioned Mr. Caudle about the incident and he, *inter alia*, told them that shots were fired from the area of 19th and Venango Streets, he ran, and then comforted the victim. He did not tell them about the craps game or identify who shot the victim.

The next day, the police again interviewed Mr. Caudle and he told them about the craps game. He also indicated that defendant owed the victim $500.00 prior to the commencement of the craps game, which defendant paid the victim back during the game. He added that the game ended when defendant won everyone's money and that when defendant began to leave, the victim, using vernacular, told defendant not to again make a bet unless he had the money in hand to back up the bet.

While Mr. Caudle denied telling the police the following, his statement contained the below information:

> I saw Jay walking to his truck. By the time I got -- by the time Jay got there shots rang out. I looked back. Jay was shooting at us. I jumped over the railing and ran back to the alley. After the shots stopped, I peeked back and Mike was on the ground next to my porch. I walked back to Mike and saw he was bleeding through his mouth and nose. He couldn't talk. He was moving a little while he was on the ground. I asked one of my neighbors if they called the police and then I heard sirens. The police got there and carried Mike to their car and took him to the hospital.

N.T. 9/19/13, 27.

Mr. Caudle testified that he told police that he did not know who shot the victim but that the police ignored him and continued to ask him who had numerous times. He added that in an

6

effort to get him to identify the shooter, police told him what other witnesses allegedly said as well as that there may have been two people present when the shooting occurred that were attempting to steal the victim's car, wherein the victim was known to keep money. Although he testified that the police treated him nicely, Mr. Caudle felt that the police were pressuring him and impliedly accusing him of wrongdoing. He further added that the police told him that defendant shot the victim and was shooting at him as well and that he signed his statement because he wanted to go home.

Tallena Drayton, *nee* Chesney, defendant's former girlfriend, was dating defendant at the time of the shooting of the victim. According to Ms. Drayton, defendant called her and told her that he had been playing dice, got into an argument with someone, and shot him. Defendant said he would be coming to see Ms. Drayton presently.

Later that day, defendant and a friend arrived in pick-up truck Ms. Drayton had rented for defendant. The friend then left in the truck and defendant spoke about the shooting. He again related that he had been playing dice on Heath Caudle's porch and that he shot someone after he and the person he shot began arguing and the person began calling him names. Defendant added that before he shot the person he went to his vehicle after which he shot the victim.

Following their discussion, defendant and Ms. Drayton drove to Ms. Drayton's home and then to Atlantic City, New Jersey, where she left defendant before returning home. She returned to Atlantic City and stayed with defendant as he gambled at a casino. The following Monday she drove defendant to the residence of someone who owed him money. Upon leaving the residence, police stopped them and recovered a .22 caliber hand gun from Ms. Drayton that defendant had given her the morning of the day of the shooting. Ms. Drayton indicated that police did not

7

discover a silver gun defendant had placed under the rug in the front passenger compartment and that she saw that gun along with a black gun on the morning when defendant gave her the .22.

Ms. Drayton was eventually interviewed by police but was not truthful with them because she was scared because defendant told her not to talk and she did not want to be involved in the matter. She related that after he was incarcerated defendant sent her letters and in one of them he wrote, "Never, [quote], cross me,", "It will be the biggest mistake in your life." The words "never cross me" were in capital letters.

Ms. Drayton again spoke to police in 2007. At the time, she had been charged by federal authorities with obstruction of justice, a charge to which she eventually pleaded guilty but had yet to be sentenced at the time of defendant's trial, pending her cooperation in the instant matter. In that statement, she told police about what defendant stated to her concerning the shooting of the victim.

The parties introduced evidence by way of stipulation indicating that defendant did not have a firearms license on the day of the incident, that Galloway (New Jersey) Township Police stopped defendant and Ms. Drayton on June 15, 2004, and recovered a .22 caliber handgun from her purse, and the following:

> [I]f Nhan Dang were called to testify, he would testify that on June 5th, 2004, at approximately 9:45 p.m., he contacted police to notify them that he had returned home to find his front door forced open. His home had been burglarized and items taken. He identified to police at that time the items that were taken and the items taken were as follows:
> One Beretta .22 caliber handgun, Serial No. DAA289032, also taken was a Jennings .9-millimeter handgun, Serial No. 1337344, and also taken was a Sig Sauer .380 handgun, Serial No. 050933, and also taken was a Phoenix Arms [19] .22 caliber handgun, Serial Number 4223428, along with a Dell laptop computer along with a Dell laptop computer.

8

> This information was recorded that day on a police report. That's marked as C-72 and recorded by Officers Pelligrino and Turner from the Philadelphia Police Department. Further, Mr. Dang in speaking with the police indicated that the .9-millimeter gun was loaded with Federal .9-millimeter Luger ammunition at the time it was taken.

N.T. 9/20/13, 141-143.

In his defense, defendant called Michael Alexander, a Philadelphia Police Officer, who had responded to the scene of the shooting upon receiving a radio call. While present at the scene, Officer Alexander spoke to Heath Caudle who said that there was gambling taking place on his porch and that when shots were fired, he jumped over the railing and fled into a vacant lot. Mr. Caudle further stated that he did not see who fired the shots.

## DISCUSSION

In reviewing the propriety of a PCRA court's dismissal of a petition without a hearing, the reviewing court is limited to determining whether the court's findings are supported by the record and whether the order in question is free of legal error. Commonwealth v. Holmes, 905 A.2d 707, 509 (Pa. Super. 2006) citing Commonwealth v. Halley, 870 A.2d 795, 799 (Pa. 2005). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. Commonwealth v. Carr, 768 A.2d 1164, 1166 (Pa. Super. 2001). A PCRA court may decline to hold a hearing on the petition if the petitioner's claims are patently frivolous and is without a trace of support either in the record or from other evidence. Commonwealth v. Jordan, 772 A.2d 1011, 1014 (Pa. Super. 2001). The reviewing court on appeal must examine each of the issues raised in the PCRA petition in light of the record in order to determine whether the PCRA court erred in concluding that there were no genuine issues of material fact and

9

denying relief without an evidentiary hearing. Id. See also Commonwealth v. Hardcastle, 701 A.2d 541, 542 (Pa. 1997).

Pennsylvania law presumes counsel is effective and therefore, the burden is placed upon the defendant to prove otherwise. Commonwealth v. Brown, 767 A.2d 576, 581 (Pa. Super. 2001), citing Commonwealth v. Carpenter, 725 A.2d 154, 161 (Pa. 1999), citing Commonwealth v. Marshall, 633 A.2d 1100 (Pa. 1993); see also Commonwealth v. Baker, 614 A.2d 663, 673 (Pa. 1992). Trial counsel has broad discretion in matters of trial strategy and the determination of what tactics to employ during litigation. Commonwealth v. Choi Chun Lam, 684 A.2d 153, 160 (Pa. Super. 1996). Furthermore, "[i]t is well established that failed trial tactics of defense counsel are not grounds for a new trial." Commonwealth v. Hall, 565 A.2d 144, 148 (Pa. 1989). Trial counsel will not be held ineffective if there was a reasonable strategic basis for his or her trial tactics. Commonwealth v. Pursell, 724 A.2d 293, 311 (Pa. 1999).

In order to establish that trial counsel's representation was deficient, a defendant must establish all of the following three elements, as set forth in Commonwealth v. Charles Pierce, 527 A.2d 973, 975-76 (Pa. 1987): (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice because of counsel's ineffectiveness. Commonwealth v. Chmiel, 30 A.3d 1111, 1127 (Pa. 2011), citing Commonwealth v. Dennis, 950 A.2d 945, 954 (Pa. 2008).

The threshold question in reviewing an ineffectiveness claim is whether the issue, argument, or tactic, which trial counsel failed to use at trial and which is the basis of the ineffectiveness claim, is of arguable merit. Commonwealth v. Balodis, 747 A.2d 341, 343 (Pa. 2000). If defendant can prove that the argument or tactic which trial counsel failed to use at trial is of arguable merit, then the "reasonable basis" test is applied to determine if the course of

10

action chosen by trial counsel was designed to effectuate his or her client's interest. Id. With regard to the second element, defendant must prove that "an alternative [action or inaction] not chosen offered a potential for success substantially greater than the course actually pursued." Chmiel, 30 A.3d at 1127, citing Commonwealth v. Williams, 899 A.2d 1060, 1064 (Pa. 2006) (alteration added). To establish prejudice, defendant must demonstrate that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. Chmiel, 30 A.3d at 1127-28, citing Dennis, 950 A.2d at 954.

Further, "[i]f it is clear that if a defendant has not demonstrated that counsel's act or omission adversely affected the outcome of the proceedings, the claim may be dismissed on that basis alone and the court need not first determine whether the first and second prongs have been met." Commonwealth v. Rios, 920 A.2d 790, 799 (Pa. 2007), citing Commonwealth v. Albrecht, 720 A.2d 693, 701 (Pa. 1998). A PCRA proceeding requires a defendant to establish that counsel's ineffectiveness "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." Rios, 920 A.2d at 799, citing Commonwealth v. Michael Pierce, supra, 786 A.2d 203, 221–22 (Pa. 2001); Commonwealth v. Kimball, 724 A.2d 326, 333 (Pa. 1999).

Applying the foregoing standards to the claims raised by defendant in his pro se PCRA petition, this Court submits that the claims properly were determined not to entitle defendant to PCRA relief.

In his PCRA defendant, in claims one, seventeen, and twenty-four through twenty-six, contended that trial counsel was ineffective for not arguing that there was an intervening and superseding cause of death, namely the actions of the police who first arrived at the scene and negligently moved and then placed the victim in a police car to take him to a nearby hospital.

11

According to defendant, the victim was alive at the time the police arrived and their manipulation of the victim's body could have caused his death. Relatedly, defendant argued trial counsel should have retained an expert to support his assertion that the actions of the police proximately caused the victim's death.

The claims were found to lack arguable merit because the law is clear that criminal liability may be imposed when the accused starts the chain of causation that ultimately led to the victim's death. The Superior Court has recognized that "criminal responsibility is properly assessed against one whose conduct was a direct and substantial factor in producing [death] This is true even though other factors combined with that conduct to achieve the result." Commonwealth v. McCloskey, 835 A.2d 801, 807 (Pa. Super 2003), citing Commonwealth v. Nicotra, 625 A.2d 1259, 1260 (Pa. Super. 1993) (other citation omitted). Here, the evidence showed that defendant shot the victim and that the medical examiner who performed the autopsy on the victim's body provided that the cause of death was a gunshot wound to the neck. The fact that the police heroically attempted to save the victim's life does not excuse or exculpate defendant and thus, counsel was not ineffective for failing to raise this baseless claim. Therefore, it is suggested that this Court's denial of relief on this claim be affirmed.

In claims two through five, defendant raised various issues arising out of this Court's decision to permit the Commonwealth to elicit from Jarrett Stiff that he and defendant were co-defendants in an unrelated federal case thereby overruling an evidentiary ruling Judge Ransom made prior to defendant's first trial holding said testimony to be inadmissible. No relief is due on these claims because said claims could have been raised previously and in fact defendant did raise a related issue on direct appeal that the Superior Court deemed lacking in merit. The PCRA provides that "an issue has been previously litigated if . . . the highest appellate court in which

12

the petitioner could have had review as a matter of right has ruled on the merits of the issue." 42 Pa.C.S. § 9544(a)(2). Moreover, pursuant to 42 Pa.C.S. § 9544(b) an issue is deemed waived "if the petitioner could have raised it but failed to do so ...on appeal...." Finally, to be eligible for PCRA relief a defendant is plead and prove, *inter alia*, "[t]hat the allegation of error has not been previously litigated . . . ." 42 Pa.C.S. § 9543(a)(3). For all of the foregoing reasons, it is suggested that this Court's decision to deny relief with respect to these claims be affirmed.

In his sixth PCRA claim, defendant stated that he is entitled to relief because the police unfairly focused on him even though there were others who had a motive and opportunity to commit the murder. This claim was dismissed because it had been waived. Defendant could have raised this claim previously and because he did not he is precluded from raising it in a PCRA petition and from receiving relief thereon. See 42 Pa.C.S. § 9544(b).

In any event, even had the claim not been deemed waived, this Court would have denied relief with respect thereto because there is no duty upon the police to investigate all leads especially where, as here, the evidence overwhelmingly inculpates the accused. For all of the foregoing reasons, it is suggested that the denial of relief with respect to this claim be affirmed.

Seventh, defendant argued that his arrest was illegal because the persons who accused him of committing the murder were unreliable and had given false statements to police. This claim was dismissed because it could have been raised previously and because it lacks both a factual and legal foundation. All of the witnesses were consistent in their identification of defendant as the man who shot the victim. Because probable cause to arrest exists when *the* police possess sufficient facts and circumstances to warrant a person of reasonable caution to believe that an offense has been committed by the person to be arrested, In re: R.P., 918 A.2d

13

115 (Pa. Super. 2007), it is clear that the arrest of defendant was legal. Therefore, for all of the foregoing reasons, the denial of relief with respect to this claim should be affirmed.

In his next claim, defendant contended that trial counsel was ineffective for failing to move to exclude the testimony of all of the Commonwealth's witnesses who inculpated defendant in the crime because their testimony was contradictory and not credible. This claim lacks arguable merit because the law does not require the exclusion of evidence on the grounds cited by defendant. In fact, the credibility of the testimony was for the fact-finder to resolve. See Commonwealth v. Blakeney, 946 A.2d 645, 652-53 (Pa. 2008) (holding that it is the province of the jury to assess the credibility of witnesses).

Moreover, by failing to set forth the reasons why he believes trial counsel should have moved to exclude the testimony of the witnesses and by failing to address each prong of the ineffectiveness test, defendant failed to meet his burden of establishing that the claim has merit. . See Commonwealth v. Durst, 522 Pa. 2, 5, 559 A.2d 504, 505 (Pa. 1989) (defendant must make offer of proof to support his allegations, as the Court "frown[s] upon considering claims of ineffectiveness of counsel in a vacuum"); Commonwealth v. Ray, 751 A.2d 233, 236 (Pa. Super. 2000) ("We cannot consider ineffectiveness claims in a vacuum; rather, appellant must set forth an offer [of proof.]").

Accordingly, it is suggested that the denial of relief on this claim be affirmed for the reasons stated.

Ninth, defendant contended that the testimony of Tallena Drayton, *nee* Chesney, concerning guns should have been excluded because it was irrelevant and prejudicial. This Court denied relief with respect to this claim because defendant could have raised the claim on

14

direct appeal and failed to do so.[4] Therefore, it was deemed waived. For this reason it is submitted that the denial of relief should be affirmed.

In his tenth and twenty-first claims, defendant accuses defense counsel of providing ineffective assistance of counsel because he did not introduce evidence indicating that someone else went to the scene of the crime with a gun to shoot the victim herein. This Court denied relief on this claim because prior counsel attempted to introduce the statements at issue in evidence and this Court sustained Commonwealth objections to their admissions. On appeal, the Superior Court sustained this Court's ruling. Therefore, because the instant matter was raised by counsel both at trial and on appeal, it is clear that no error occurred in denying relief on this claim and it is suggested that the decision be affirmed on appeal.

Eleventh, defendant claimed that he had newly discovered evidence consisting of a letter dated August 3, 2010, signed by a man named Donte Jones wherein Jones states that he was a cell mate with Hassan East and that East admitted to him that he falsely accused defendant of having killed the victim herein in order to benefit himself. Relief was denied on this claim because the letter does not meet the definition of newly discovered evidence. To obtain relief based upon newly-discovered evidence under the PCRA, appellant must establish that: (1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict. Commonwealth v. Abu-Jamal, 553 Pa. 485, 720 A.2d 79, 94 (1998).

Here, defendant failed to satisfy the first prong because it is clear that the information contained in the letter was available well prior to the commencement of defendant's trial, the

---

[4] This issue was raised in defendant's 1925(b) statement and was addressed in this Court's 1925(a) opinion. Defendant's appellate counsel chose not to raise it on appeal.

15

letter having been drafted in August of 2010. In addition, defendant failed to establish that the information contained in the letter would compel a different result given that several witnesses implicated defendant in the crime. Finally, and most importantly, the contents of the letter were inadmissible hearsay and would have served only to impeach East. Thus, this Court determined that there was no merit to this claim.

To the extent that defendant asserted that trial counsel was ineffective for failing to call Donte Jones as a witness, a review of the claim showed it to be lacking in merit. To establish a claim that counsel was ineffective for failing to investigate or call witnesses, a defendant must establish the following: that the witness existed; that the witness was available and willing to testify for the defense; that defense counsel knew or should have known of the existence of those witnesses prior to the time of trial; that the witness would have provided material evidence at the time of the trial; and, that the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial. Commonwealth v. Johnson, 966 A.2d 523 (Pa. 2009); Commonwealth v. Lawson, 762 A.2d 753 (Pa. Super. 2000).

Relief was denied on this claim because even had Jones testified the outcome of the case would not have been different. The evidence of guilt was overwhelming and East underwent extensive cross-examination that included an attack on his veracity because he received benefits in his own criminal matters in exchange for his testimony. Accordingly, it is suggested that the denial of relief on defendant's eleventh claim be affirmed for the reasons stated.

In his twelfth claim, defendant argues that his sentence is illegal because it violates the holding of Alleyne v. United States, 133 S.Ct. 2151 (2013), wherein the United States Supreme Court overruled its prior decision in Harris v. United States, 536 U. S. 545 (2002), and held that facts necessary to establish the applicability of a mandatory minimum sentence must be

16

submitted to the jury and found beyond a reasonable doubt. Relief was denied with respect to this claim because the record is devoid of evidence establishing that defendant was sentenced pursuant to a mandatory sentencing provision rendered unconstitutional by Alleyne. In addition, relief was denied because no court has held that Alleyne applies retroactively to matters on collateral review. It is noted that both the Pennsylvania Supreme and Superior Courts have ruled that Alleyne does not apply to matters on collateral review. See Commonwealth v. Washington, ___ A.3d _____, 2016 WL 3909088 (Pa. 2016), and Commonwealth v. Ciccone, ___ A.3d ___, 2016 PA Super 283 (Slip Opinion issued 12/13/16) (en banc).

Accordingly, for all of the foregoing reasons, it is suggested that the denial of relief with respect to this claim be affirmed.

Defendant's thirteenth claim asserted that he was prejudiced by the introduction of evidence related to certain guns. Relief was denied on this claim because it was waived as defendant could have raised it previously. Therefore, it is suggested that the decision of this Court be affirmed for that reason.[5]

Defendant's fourteenth claim, which asserted that he was entitled to relief because Heath Caudle gave inconsistent statements about the incident that did not mention that East was present when the killing occurred, was rejected because it also could have been raised previously.[6] Defendant's claim was therefore properly deemed lacking in merit and it is suggested that the ruling be affirmed.

---

[5] This Court addressed claims with respect to the admissibility of the evidence concerning various weapons connected to the case in its 1925(a) opinion. It is the position of this Court that the evidence was properly admitted into evidence for the reasons set forth in its opinion.

[6] It is noted that Heath Caudle was extensively cross-examined by trial counsel and that Caudle was an uncooperative witness for the Commonwealth.

17

In claim fifteen, defendant asked this Court to review the contents of a statement given by Tallena Drayton, *nee* Chesney, to police wherein she stated there had been a gun under the floor mat of the car she was driving when she was stopped by police, which she contended the police did not find. Relief was properly denied with respect to this claim because it could have been raised previously and this Court has no duty to prove the merits of a PCRA litigant's claims. It is noted that at trial the parties entered a stipulation indicating that no gun was found in the car thereby mitigating any prejudice that may have arisen. Therefore, it is suggested that the denial of relief on this claim be affirmed.

Defendant's sixteenth claim raised various allegations concerning Hassan East's credibility ostensibly for the purpose of convincing this Court that the convictions should be overturned because East was not credible and fabricated his testimony accusing defendant of having shot the victim. Apart from the fact that petitioner failed to raise a claim seeking relief and whatever claim there is could have been raised previously , relief was denied because issues of credibility were for the jury. As noted herein, East was extensively cross-examined. The fact that the jury may have found him credible does not raise a claim for relief and therefore it is suggested that the denial of relief thereon be affirmed.

Defendant's eighteenth issue asserted that trial counsel was ineffective for failing to move for a mistrial following comments made by the prosecutor that defendant submits implicated his constitutional right not to testify in his own defense. Defendant's ineffectiveness claim was deemed lacking in merit because the issue of the propriety of the comments was raised on direct appeal and found not to have violated defendant's constitutional rights. The law is clear that a trial court may grant a mistrial "only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing

18

a jury from weighing and rendering a true verdict." Commonwealth v. Chamberlain, 30 A.3d 381, 422 (Pa. 2011). (citation and internal quotation marks omitted); see also Commonwealth v. Travaglia, 28 A.3d 868, 879 (Pa. 2011). Applying this standard convinced this Court that counsel was not ineffective for not requesting a mistrial because the Superior Court's ruling established that the comments were not so prejudicial such that the grant of a new trial was warranted. Therefore, the claim was rejected and it is submitted that the ruling should be affirmed on appeal.

Defendant's nineteenth issue baldly asserted that a witness for the defense was told to leave the court house before having a chance to testify. The claim was dismissed first because defendant could have raised the claim previously and second because defendant failed to set forth what the witness would have testified to or how the witnesses' testimony would have resulted in a different verdict. See also Commonwealth v. Hentosh, 554 A.2d 20, 24-25 (Pa. 1989) (claims of ineffectiveness are not self-sustaining, but must be established by submission of relevant proofs, and failure to submit such relevant proofs supporting claim of ineffectiveness warrants summary rejection of the claim); Commonwealth v. Hutchinson, 556 A.2d 370, 372 (Pa. 1989) (the defendant bears the burden of proving allegations of ineffective assistance by submission of relevant proofs). Accordingly, it is suggested that the denial of relief on this claim be affirmed.

In his twentieth issue, defendant asserted that trial counsel was ineffective for not requesting a curative instruction after Jarrett Stiff testified that as a condition of bail he was not permitted to have contact with defendant, a co-defendant. (N.T. 9/17/13, 81). Following the comment, trial counsel objected and moved for a mistrial. (N.T. 9/17/13, 84). After this Court

19

stated that the trial would continue, trial counsel stated that he did not want a curative instruction. (Id).

Relief was denied with respect to this claim because counsel had a reasonable basis for foregoing a cautionary instruction, namely that any instruction would have highlighted any prejudicial aspect of the complained of testimony. It was also denied because defendant did not establish that he was prejudiced by the lack of a cautionary instruction given that the comment was brief and the evidence of guilt overwhelming. In other words defendant did not show a reasonable probability that the outcome of his trial would have been different if a limiting instruction had been given with respect to the above-referenced testimony. See Commonwealth v. Douglas, 737 A.2d 1188, 1199 (Pa. 1999) (where the defendant failed to demonstrate prejudice, he could not show that trial counsel was ineffective for failing to request cautionary instruction regarding defendant's alleged drug involvement); Commonwealth v. Blystone, 725 A.2d 1197, 1204-05 (Pa. 1999) (reference to the defendant having been in prison and on parole could not have prejudiced him where there was overwhelming evidence of his guilt); Commonwealth v. Sam, 635 A.2d 603, 607-08 (Pa. 1993) (trial counsel not ineffective for failing to request limiting instruction regarding prior beatings inflicted by the defendant; given the overwhelming evidence of guilt, failure to request the instruction did not alter the outcome at trial). Therefore, for all of the foregoing reasons, it is suggested that the denial of relief with respect to this claim be affirmed.

Defendant's twenty-second claim asserted that trial counsel was ineffective for not securing Henry Brown a/k/a "Little Henry, who is Barbara Dantzler's grandson as a witness for the purpose of establishing, according to defendant, that Brown confessed to his grandmother that he actually shot the victim. It is suggested that the denial of relief be affirmed because

20

defendant failed to provide sufficient information to support this claim and also failed to discuss the three prongs of the ineffectiveness test in relation to this claim.

Moreover, the claim was be dismissed because defendant did not establish prejudice as Ms. Dantzler admitted that she lied about her grandson's involvement. (NT, 9/23/2013, 4). It is suggested that the dismissal be affirmed on appeal.

In issue twenty-three, defendant argued that trial counsel was ineffective for not requesting a Kloiber[7] instruction. Relief was properly denied with respect to this claim because the witnesses knew defendant and any failure by the witnesses to identify defendant sprang from a reluctance to identify defendant in court rather than from any problem with the circumstances under which the identifications were made. Accordingly, relief should be denied with respect to this claim.

Issue twenty-four, wherein defendant baldly argued that Heath Caudle's testimony differed from what he told police, was deemed lacking in merit because defendant set forth no claim, whatever claim defendant was attempting to raise could have been raised previously, and there was no prejudice because Caudle went "south" at trial and refused to testify that what was contained in his statements was true. The denial of relief should be affirmed for these reasons.

---

[7] Commonwealth v. Kloiber, 106 A.2d 820 (1954). A Kloiber charge is necessary only where an identification witness was not in the position to observe the accused, Commonwealth v. Simmons, 647 A.2d 568 (Pa. Super. 1994), or where the witness failed to identify the defendant on one or more prior occasions. Commonwealth v. Yarris, 519 Pa. 571, 549 A.2d 513 (1988), cert denied, 491 U.S. 910 (1989).1

## CONCLUSION

For the foregoing reasons, it is suggested that the order denying defendant PCRA be affirmed.

By the Court,

Date: 12/16/16

Honorable Jeffrey P. Minehart

22